IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LATANZIA STEPHENS**, individually, and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> **SAGESURE INSURANCE MANAGERS LLC**, <br><br> Defendant. | COLLECTIVE ACTION COMPLAINT <br><br> JURY TRIAL DEMANDED <br><br> Case No.: <br><br> Hon. |

## COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Latanzia Stephens (hereinafter, "Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, hereby brings this Collective Action Complaint against Defendant, SageSure Insurance Managers LLC (hereinafter, "Defendant"), and states as follows:

## INTRODUCTION

1.     This is a collective action pursuant to the Equal Pay Act, 29 U.S.C. § 206 (hereinafter, the "Equal Pay Act") brought to redress injuries inflicted on the Plaintiff, all other similarly situated individuals and putative Collective members, by Defendant. Defendant unlawfully discriminated, on the basis of gender, against Plaintiff, similarly situated individuals, and the putative Collective, with regards to the terms, conditions, and privileges of employment.

2.     Plaintiff and the putative Collective members consist of current and former female insurance adjusters under various job titles, such as Adjuster, Level I

Adjuster, Level II Adjuster, Level III Adjuster, Claims Adjuster, Property Claims Adjuster, Desk Adjuster, Field Adjuster, Public Adjusters, or similar positions (hereinafter, collectively referred to as "Adjusters"), who were improperly discriminated against on the basis of their gender. Throughout the relevant period, Defendant maintained a corporate policy and practice of gender discrimination which resulted in female employees of Defendant being adversely treated, paid, and/or denied equal job and conditions of employment opportunities as compared to male employees.

3.      Regardless of the specific job title, all female Adjusters 1) were intentionally paid less than male employees who performed substantially similar work and had equal responsibility; and 2) were intentionally denied promotional opportunities and/or conditions of employment in favor of male employees who performed substantially similar work and had equal responsibility.

4.      In particular, Defendant maintained an intentional and deliberate discriminatory pay structure, and also intentionally and deliberately promoted male employees in favor of female Adjusters, despite male employees having objectively less responsibility, education, and experience as compared to female Adjusters.

5.      Defendant's intentionally discriminatory pay and promotion policies against Plaintiff and other female Adjusters in favor of male employees has violated Plaintiff's and other female Adjusters' rights under the Equal Pay Act.

2

6.     Plaintiff brings this action for violations of the Equal Pay Act as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of the following Collective:

> *All current and former female insurance adjusters who worked for Defendant at any time during the past three years.*

7.     Plaintiff's Equal Pay Act claim may be maintained as an "opt-in" collective action pursuant to 29 U.S.C. 216(b) because Plaintiff is similarly situated to the female Adjuster employees described in the putative Collective. Plaintiff's claims are similar to the claims asserted by the putative Collective.

8.     Adjusters who elect to participate in this collective action seek compensation for Defendant's willful violations of the Equal Pay Act, an equal amount for liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

9.     Defendant is liable for intentionally paying female Adjusters less than male employees who performed substantially similar work and had equal responsibility, and also intentionally denying female Adjusters promotional opportunities and/or conditions of employment in favor of male employees who performed substantially similar work and had equal responsibility.

10.     Plaintiff, on behalf of herself individually and a Collective of similarly-situated female Adjusters, for violations of the Equal Pay Act, 29 U.S.C. § 206, seeks to recover damages for the proposed Collective, including, but not limited to,

compensatory, punitive, and liquidated damages, reasonable attorneys' fees, and litigation costs.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over Plaintiff's claims pursuant to the Equal Pay Act of 1963, 29 U.S.C. § 206(d), *et seq*., 42 U.S.C. § 2000e, *et seq*., and 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq*.

12.    Additionally, this Court has diversity jurisdiction over Plaintiff's claim pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant reside in different states.

13.    The Court has personal jurisdiction over Defendant because Defendant conducts business within the State of New Jersey, and its principal place of business is located in the State of New Jersey.

14.    Venue is proper in the District of New Jersey pursuant to 28 U.S.C. §1391 (b) and (c) because the Defendant is registered in and conducts business in this District, and a substantial portion of the events that give rise to the Plaintiff's claims occurred in this District.

15.    All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

## PARTIES

16.     Plaintiff Latanzia Stephens is a resident of Daphne, Alabama.  Plaintiff
Stephens worked for Defendant as an Adjuster from approximately February 2022
to March 2023. Defendant compensated Plaintiff for her services as an Adjuster in
the form of a yearly salary, most recently at the rate of $80,000 per year.  Plaintiff is
an "employee" of Defendant as defined by the Equal Pay Act. Plaintiff Stephens
signed a consent form to join this collective action lawsuit, ***Exhibit A***.

17.     Additional putative Collective members were or are employed by
Defendant as Adjusters in Alabama and potentially other states during the past three
years, and their consent forms will also be filed in this case.

18.     According to Defendant's website, Defendant "is a program manager
and servicing agent providing property insurance through a network of insurance
agents and brokers. Essentially, we help agents and brokers make sure that
policyholders like you get access to the high-quality, competitively priced products
you need and deserve. As the third-party administrator of your policy, we provide
all policy and billing support outside of the claims process."[1]

19.     Defendant SageSure Insurance Company LLC is a Florida Limited
Liability Company (FEI/EIN Number 20-3855926) with a principal office located at
101 Hudson Street, Suite 2700, Jersey City, New Jersey 07302. Defendant's

---

[1] *See* https://www.sagesure.com/faq/ (Last visited on August 6, 2023).

registered agent for service of process is Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301-2525.

20.    At all times relevant to this action, Defendant was an "employer" as defined by the Equal Pay Act.

21.    Upon information and belief, Defendant employed hundreds of Adjusters – including Plaintiff – within the past three years and across the United States to assist its customers with their customer service needs.

## GENERAL ALLEGATIONS

22.    Defendant maintains strict, centralized control over its Adjusters, which includes hiring and wage decisions. In order to maintain this control, Defendant has a rigid, top-down, hierarchical corporate structure.

23.    Adjusters, like Plaintiff, take calls from Defendant's clients and determine if the client's claim is covered by the client's insurance, and also determines the payout of the claim based on the loss type and insurance policy coverage.

24.    Defendant's hierarchal structure separates the Adjuster position into three levels, each of which vary in terms of pay and bonus structure. The three levels of Adjuster are named Level I Adjuster, Level II Adjuster, and Level III Adjuster, with Level III Adjusters earning a higher salary and a higher bonus structure than Level II Adjusters, and Level II Adjusters earning a higher salary and a higher bonus

structure than Level I Adjusters.

25.    Adjusters are told that Defendant's placement of Adjusters into each level is based upon the Adjuster's years of experience in the Adjuster position.

26.    However, due to Defendant's discriminatory hiring and pay policies, Defendant frequently hires male employees with the same or less experience at the Adjuster position, and pays them more, with a more favorable bonus structure, than female Adjusters with the same or more experience at the Adjuster position.

27.    Additionally, due to Defendant's discriminatory promotion policies, Defendant frequently promotes male employees with the same or less experience at the Adjuster position to higher levels of the Adjuster position (for example, from Level II to Level III), and pays them more, with a more favorable bonus structure, instead of promoting a female Adjuster with the same or more experience at the Adjuster position.

28.    These discriminatory hiring, promotion, and pay policies disparately impact female Adjusters, despite the Adjuster position requiring equal skill, effort, and responsibility.

29.    Moreover, due to Defendant's discriminatory promotion policies, Defendant frequently promotes male employees with the same or less experience at the Adjuster position to higher levels of management positions within Defendant's company, and pays them more, with a more favorable bonus structure, instead of

promoting a female Adjuster with the same or more experience at the Adjuster position.

30.    Adjusters employed by Defendant report directly to Team Managers. Team Managers assist Adjusters with ensuring that Defendant's clients' claims are paid in a timely manner.

31.    Team Managers employed by Defendant report directly to Operational Managers. Operational Managers oversee Defendant's insurance adjusting operations.

32.    Upon information and belief, there are several more levels of executive managerial positions at Defendant's company, either at the Operational Manager level, or above.

33.    Due to Defendant's discriminatory promotion policies, Defendant frequently promotes male employees with the same or less experience at the Adjuster position to the Team Manager position (for example, from a Level II or a Level III Adjuster position to a Team Manager Position), and pays them more, with a more favorable bonus structure, instead of promoting a female Adjuster with the same or more experience at the Adjuster position.

34.    As a result of Defendant's discriminatory pay practices and policies, Level II Adjusters, Level III Adjusters, and Team Managers have been overwhelmingly male.

35.     Additionally, as a result of Defendant's discriminatory pay practices and policies, male Adjusters across the board make more than female Adjusters, both in terms of salary, as well as in terms of receiving a more favorable bonus structure.

36.      Upon information and belief, in order for Adjusters of any level to be hired, have their salary and bonus structure set, or have their salary and bonus structure increased, or be promoted to the Team Manager level, Defendant's Team Managers and Operational Managers must approve of the hiring, salary, bonus structure, and/or promotion.

37.     As a result, Defendant's executive leadership has executed a top-down wage policy, which consistently, systematically, and willfully discriminates on the basis of sex/gender by paying its female Adjusters less than their male colleagues, in the same positions, for the same work.

38.     Defendant's deliberate gender discrimination against women manifests itself in the salaries and rates of pay for each Adjuster position within Defendant's company.

39.     Defendant deliberately and willfully pays female Adjusters less than their male colleagues in the same positions with the same responsibilities. The wage disparity between female and male employees, at all levels of the Adjuster position within Defendant's company, is based solely on gender.

## PLAINTIFF STEPHENS' EXPERIENCE AS A SAGESURE ADJUSTER

40.    Plaintiff Stephens was hired by Defendant as a Level II Adjuster in February 2022. Plaintiff Stephens was promised a salary of $80,000 per year, plus an additional 10% bonus on that amount at the end of the year, should she hit certain performance metrics. Plaintiff has over eleven years of experience at the Adjuster position throughout her career.

41.    From approximately February 2022 to March 2023, Plaintiff was among the most talented and dedicated Adjusters employed by Defendant.

42.    Despite Plaintiff's demonstrated acumen and dedication, Plaintiff was consistently paid less than her male colleagues who had the same title and performed the same work.

43.    The only basis for the wage disparity between Plaintiff and her male colleagues was Defendant's consistent and deliberate gender-based wage discrimination against women.

44.    While Defendant purportedly had a policy of hiring and promoting Adjusters based on experience at the Adjuster level, in Plaintiff's experience, this was not the case, as male Adjusters were frequently:

      a.    Hired in with a higher salary and/or bonus structure than Plaintiff, despite Plaintiff having the same or more experience at the Adjuster level;

      b.    Hired in at a higher Adjuster level than Plaintiff, despite Plaintiff having the same or more experience at the Adjuster level;

      c. Promoted to a higher position than Plaintiff (for example, from Level II Adjuster to Level III Adjuster, or Level III Adjuster to Team Manager), despite Plaintiff having the same or more experience at the Adjuster level.

45.   Plaintiff has observed this discrimination firsthand on numerous occasions. Plaintiff is aware that she, and other female employees, were paid substantially less than male comparators who had the same or less job responsibility, education, and experience.

46.   For example, Defendant's employees Patrick Gleason, John Ward, and Jonathan Shoud were all brought in to be Level II Adjusters (the same position as Plaintiff), and they each had less experience at the Adjuster position as compared to Plaintiff, yet they were paid more and received a better bonus structure. Plaintiff's job responsibilities were equivalent to that of her male comparators, however, not only was Plaintiff paid substantially less than her comparators, but also, Plaintiff was paid less than male comparators who had substantially less experience at the Adjuster level than her.

47.   Plaintiff verified this by speaking with co-workers, who told her that Defendant was hiring male colleagues at the Adjuster level and providing them with higher compensation packages than female Adjusters.

48.   Plaintiff also observed that Defendant's employees Patrick Gleason and John Ward were quickly promoted to supervisory or management roles ahead of

Plaintiff or other more experienced female Adjusters in the company.

49.    By any measure, Plaintiff was an exemplary Adjuster of Defendant. Despite this, Plaintiff repeatedly observed discrepancies in pay between herself and male Adjusters. Further, Plaintiff repeatedly observed discrepancies between the promotional practices of Defendant, and Defendant's promotion of male employees ahead of herself and other female Adjusters.

50.    Plaintiff observed that Defendant consistently paid female Adjusters less than their male colleagues in the same positions doing the same work.

51.    Plaintiff was an exemplary Adjuster for Defendant who was consistently paid less than her male colleagues with the same titles performing the same job responsibilities. Defendant had no basis, other than gender, to pay Plaintiff less than her male colleagues. Defendant's actions were deliberate and willful and violated the Equal Pay Act.

52.    Defendant's unequal payment of compensation to males compared to Plaintiff and other female Adjusters was not made in accordance with any seniority system, merit system, a system which measured earnings by quantity or quality of production, or a differential based on any factor other than sex.

53.    Defendant has paid Plaintiff, similarly situated individuals, and the proposed Collective, substantially less than similarly situated male co-workers with similar (or less) education, experience, and responsibilities.

54.    Defendant has consistently ignored complaints about its unlawful pay practices, inadequately investigated these complaints, and/or failed to implement steps that would or did eliminate their unlawful actions.

55.    Defendant's treatment and tolerance of gender discrimination has infected all aspects of employment practices affecting female Adjusters. Defendant has pursued, condoned, acquiesced in, and/or failed to eliminate continuing policies and/or practices that, though often facially neutral, have adversely treated and/or adversely impacted Defendant's female Adjusters and/or that have the intent and effect of denying females equal job and conditions of employment opportunities. These policies or practices include those already mentioned and also include, without limitation:

    a.  Failing and refusing to establish and/or enforce a uniform and unbiased process by which male and female employees can apply and compete equally for promotions, training opportunities, overtime, and management positions;

    b.  Promoting individuals into higher Adjuster levels, managerial, and supervisory positions without determining or attempting to evaluate whether the compensation provided is gender-biased;

    c.  Paying female Adjusters less than similarly situated male employees; and

    d.  Paying female Adjusters less than male employees with less education, experience, and/or responsibilities than the female employees.

56.    On May 31, 2023, Plaintiff filed a Charge of employment discrimination against Defendant with U.S. Equal Employment Opportunity

13

Commission (Charge No. 425-2023-00684). Her Charge remains under investigation and, upon receipt of a Right to Sue letter, she will seek to amend this Complaint to add a claim under Title VII of the Civil Rights Act of 1964, as amended, Title 42 U.S.C. § 2000e, *et seq*.

## EQUAL PAY ACT COLLECTIVE ACTION ALLEGATIONS

57.     Plaintiff brings this action for violations of the Equal Pay Act as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and on behalf of:

> *All current and former female insurance adjusters who worked*
> *for Defendant at any time during the past three years.*

(hereinafter referred to as the "EPA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

58.     Defendant is liable under the Equal Pay Act for, *inter alia*, failing to properly compensate Plaintiff and other similarly situated Adjusters.

59.     Excluded from the proposed EPA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside salespersons.

60.     Consistent with Defendant's policy and pattern or practice, Plaintiffs and the members of the EPA Collective are victims of gender discrimination wherein female Adjusters make less than male employees who performed substantially similar work and had equal responsibility; and also female Adjusters are

intentionally denied promotional opportunities and/or conditions of employment in favor of male employees who performed substantially similar work and had equal responsibility.

61.    Defendant is aware of, and intentionally engages in, the above-described policy, pattern, and/or practice of gender discrimination against Plaintiff and the members of the EPA Collective.

62.    As part of its regular business practices, Defendant intentionally, willfully, and repeatedly engages in a pattern, practice, and/or policy of violating the EPA with respect to Plaintiff and the members of the EPA Collective.  This policy and pattern or practice includes, but is not limited to:

   a.  Willfully failing to pay its female Adjuster employees, including Plaintiff and the members of the EPA Collective, the same as male employees who performed substantially similar work and had equal responsibility;

   b.  Willfully and intentionally denying female Adjusters, including Plaintiff and the members of the EPA Collective, promotional opportunities and/or conditions of employment in favor of male employees who performed substantially similar work and had equal responsibility.

63.    Defendant is aware or should be aware that federal law required it to pay Plaintiff and the members of the EPA Collective equal pay for equal work, and explicitly prohibits discrimination on the basis of sex. 29 U.S.C. § 206(d).

64.    Defendant's unlawful conduct has been and continues to be widespread, repeated, and consistent.

65.    A collective action under the Equal Pay Act is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b).  The employees on behalf of whom Plaintiff bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

66.    The employment relationships between Defendant and every proposed EPA Collective member are the same and differ only by name, location, and rate of pay. The key issues – the unlawful pay policies and denial of promotional opportunities – does not vary substantially among the proposed EPA Collective members.

67.    There are many similarly situated current and former Adjusters who have been underpaid and/or denied promotional opportunities in violation of the EPA.  They would benefit from the issuance of a court-authorized notice of this lawsuit and the opportunity to join.

68.    Plaintiff estimates the EPA Collective, including both current and former Adjusters over the relevant time period, includes hundreds of members. The precise number should be readily available from a review of Defendant's personnel and payroll records.

69.     All of the estimations discussed herein will be refined after class discovery is completed.

**COUNT I**
**(Individual and Collective Action Claim)**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT OF 1938, AS AMENDED BY THE EQUAL PAY ACT OF 1963, 29 U.S.C. § 206,** *et seq.*
**DISCRIMINATION ON THE BASIS OF SEX**

70.     Plaintiff incorporates by reference all of the preceding allegations contained herein.

71.     This Count is brought on behalf of Plaintiff and all members of the EPA Collective against Defendant.

72.     Defendant is an employer of Plaintiff and the members of the EPA Collective within the meaning of the Fair Labor Standards Act of 1938, 29 U.S.C. § 206, *et seq.*, as amended by the Equal Pay Act of 1963.

73.     Defendant has discriminated against Plaintiff and the members of the EPA Collective by paying them less than similarly situated male employees who performed jobs which required equal skill, effort, and responsibility, and which were performed under similar working conditions.

74.     Defendant has discriminated against Plaintiff and similarly situated individuals during the course of their employment with respect to the terms, conditions, and privileges of employment on the basis of gender, in violation of the Equal Pay Act, 29 U.S.C. § 206.

75.    Defendant intentionally paid Plaintiff and similarly situated individuals less than male employees who performed substantially similar work and had equal responsibility. Defendant also intentionally paid Plaintiff and similarly situated individuals less than male employees who had objectively less responsibility, education, and experience.

76.    Defendant discriminated against Plaintiff and the members of the EPA Collective by subjecting them to common discriminatory pay and performance management policies, including discriminatory salaries and wages in violation of the Equal Pay Act.

77.    The differential in pay between Plaintiff and the members of the EPA Collective and similarly situated male employees was not due to seniority, merit, quantity or quality of production, or a factor other than sex, but was, in fact, due exclusively to sex.

78.    Defendant caused, attempted to cause, contributed to, and caused the continuation of wage rate discrimination based on sex in violation of the Equal Pay Act.

79.    Defendant intentionally paid Plaintiffs and the members of the EPA Collective less than similarly-situated male employees in violation of the Equal Pay Act. The foregoing conduct constitutes a willful violation of the Equal Pay Act within the meaning of 29 U.S.C. § 255(a). Because Defendant has willfully violated

the Equal Pay Act, a three year statute of limitations applies to such violations pursuant 29 U.S.C. § 255(a)

80.    Defendant had no reasonable grounds for believing that its actions were not in violation of the Equal Pay Act because Plaintiff and members of the EPA Collective put Defendant on notice of its gender-based wage discrimination when they complained of their unequal pay compared to their male comparators.

81.    Defendant's intentional and deliberate maintenance of a discriminatory pay structure, after being informed of an example of gender-based wage discrimination, constitutes a willful violation of the Equal Pay Act.

82.    As a direct and proximate result of Defendants' unlawful and willful discriminatory actions, Plaintiff and similarly situated individuals, members of the EPA Collective, have been damaged, sustaining lost wages, future lost earning capacity, physical, mental, and emotional distress, personal embarrassment, humiliation, and more.

83.    As a result of Defendant's unlawful conduct, Plaintiff and members of the EPA Collective suffered and will continue to suffer harm including, but not limited to, lost earning, lost benefits, lost future employment opportunities, and other financial losses, as well non-economic damages.

84.    Plaintiff and the EPA Collective are entitled to all legal and equitable remedies available for violations of the Equal Pay Act, including, but not limited to,

19

back pay, liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and litigations costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Latanzia Stephens, on behalf of herself and on behalf of the putative EPA Collective, requests judgment as follows:

a.   Conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the Equal Pay Act claims set forth herein (Count I);

b.   Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all proposed EPA Collective members, and permitting Plaintiff to send notice of this action to all those individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the EPA Collective members of their rights by law to join and participate in this lawsuit;

c.   Designating Plaintiff Latanzia Stephans as the Representative of the EPA Collective, and undersigned counsel as Collective counsel for the same;

d.   Declaring Defendant violated the Equal Pay Act;

e.   Declaring Defendant's violations of the Equal Pay Act were willful;

f.   A declaratory judgment that Defendant's acts, policies, practices, and procedures complained of herein violate provisions of the Equal Pay Act;

g.   That the Court order injunctive relief that Defendant be immediately ordered to comply with the Equal Pay Act;

h.   Award back pay to Plaintiff and the members of the EPA Collective, including a sum to compensate Plaintiff and the members of the EPA

Collective for any increased tax liability on a lump-sum award of back pay;

i.      Granting judgment in favor of Plaintiff and the EPA Collective against Defendant and awarding Plaintiff and the EPA Collective the full amount of damages and liquidated damages available by law;

j.      Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute; and

k.      Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Court Rules and statutes made and provided with respect to the above-entitled cause.

Dated: December 26, 2023                    Respectfully Submitted,

*/s/ Jason T. Brown*
Jason T. Brown
Nicholas Conlon
BROWN, LLC
111 Town Square Place, Suite 400
Jersey City, NJ 07310
T: (877) 561-0000
F: (855) 582-5297
jtb@jtblawgroup.com
nicholasconlon@jtblawgroup.com

Kevin J. Stoops (pro hac vice application forthcoming)
Jesse L. Young (pro hac vice

application forthcoming)
Albert J. Asciutto (pro hac vice
application forthcoming)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Phone: (248) 355-0300
Email: kstoops@sommerspc.com
Email: jyoung@sommerspc.com
Email: aasciutto@sommerspc.com

*Attorneys for Plaintiff and the Putative
Collective*