## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LATANZIA STPEHENS, individually, and on behalf of all others similarly situated | Civil Action No. 2:23-cv-23338 |
| Plaintiff | |
| vs. | **FIRST AMENDED COMPLAINT - COLLECTIVE ACTION** |
| SAGESURE INSURANCE MANAGERS LLC | **Jury Trial Demanded** |
| Defendant | |

## <u>FIRST AMENDED COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Plaintiff, Latanzia Stephens (hereinafter, "Plaintiff"), individually, and on behalf of others similarly situated by and through her attorney, Daryl J. Kipnis, Esq., hereby brings this First Amended Complaint against Defendant, SageSure Insurance Managers LLC (hereinafter, "Defendant"), and states as follows:

## <u>INTRODUCTION</u>

1.     This is an collective action pursuant to the Equal Pay Act, 29 U.S.C. § 206 (hereinafter, the "Equal Pay Act") brought to redress injuries inflicted on the Plaintiff, all other similarly situated individuals and putative Collective members, by Defendant. Defendant unlawfully discriminated, on the basis of gender, against Plaintiff, similarly situated individuals, and the putative Collective, with regards to

1

the terms, conditions, and privileges of employment. Plaintiff also brings individual claims against Defendant under Title VII of the Civil Rights Act of 1964 (hereinafter the "Civil Rights Act"), 42 U.S.C. 2000e *et seq.,* and the Americans With Disabilities Act of 1990 (hereinafter the "ADA"), 42 U.S.C. § 12101, *et seq.* to seek redress for discrimination based on gender, race, and disability.

2.      Plaintiff and the putative Collective members consist of current and former female insurance adjusters working for Defendant under various job titles, including, but not limited to: Adjuster, Level I Adjuster, Level II Adjuster, Level III Adjuster, Claims Adjuster, Property Claims Adjuster, Desk Adjuster, Field Adjuster, Public Adjusters, or similar positions (hereinafter, collectively referred to as "Adjusters") who were improperly discriminated against on the basis of their gender. Plaintiff, individually, was hired in the capacity of Adjuster Level 2 on February 14, 2022. She is an African-American female U.S. citizen who suffers from disabling mental illness, the nature of Defendant was previously made aware at times relevant to this action. Throughout the relevant period, Defendant maintained a corporate policy and practice of gender discrimination which resulted in female employees of Defendant being adversely treated, paid, and/or denied equal job and conditions of employment opportunities as compared to male employees. Additionally, on information and belief, the Defendant maintained a corporate culture that resulted in only white males being promoted to management

2

roles, regardless of their number of years and educational backgrounds, as well as one that fostered discrimination against employees suffering from mental illness.

3.     Regardless of their specific job title, all female Adjusters 1) were intentionally paid less than male employees who performed substantially similar work and had equal responsibility; and 2) were intentionally denied promotional opportunities and/or conditions of employment in favor of male employees who performed substantially similar work and had equal responsibility.

4.     In particular, Defendant maintained an intentional and deliberate discriminatory pay structure, and also intentionally and deliberately promoted male employees in favor of female Adjusters, despite male employees having objectively less responsibility, education, and experience as compared to female Adjusters.

5.     Defendant's intentionally discriminatory pay and promotion policies against Plaintiff and other female Adjusters in favor of male employees has violated Plaintiff's and other female Adjusters' rights under the Equal Pay Act.

6.     Plaintiff brings this action for violations of the Equal Pay Act as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of the following Collective:

> *All current and former female insurance adjusters who worked*
> *for Defendant at any time during the past three years.*

7.     Plaintiff's Equal Pay Act claim may be maintained as an "opt-in" collective action pursuant to 29 U.S.C. 216(b) because Plaintiff is similarly situated

3

to the female Adjuster employees described in the putative Collective. Plaintiff's claims are similar to the claims asserted by the putative Collective.

8.     Adjusters who elect to participate in this collective action seek compensation for Defendant's willful violations of the Equal Pay Act, an equal amount for liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

9.     Defendant is liable for intentionally paying female Adjusters less than male employees who performed substantially similar work and had equal responsibility, and also intentionally denying female Adjusters promotional opportunities and/or conditions of employment in favor of male employees who performed substantially similar work and had equal responsibility.

10.     Plaintiff, on behalf of herself individually and a Collective of similarly-situated female Adjusters, for violations of the Equal Pay Act, 29 U.S.C. § 206, seeks to recover damages for the proposed Collective, including, but not limited to,

compensatory, punitive, and liquidated damages, reasonable attorneys' fees, and litigation costs. Plaintiff additionally brings individual claims of discrimination based on race, gender, and disability against Defendant pursuant to the enclosed Notice of Right to Sue issued by the EEOC on April 25, 2024.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over Plaintiff's claims pursuant to the Equal Pay Act of 1963, 29 U.S.C. § 206(d), *et seq*., 42 U.S.C. § 2000e, *et seq*., 42 U.S.C. § 12101, and 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq*.

12.    Additionally, this Court has diversity jurisdiction over Plaintiff's claim pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant reside in different states.

13.    The Court has personal jurisdiction over Defendant because Defendant conducts business within the State of New Jersey, and its principal place of business is located in the State of New Jersey.

14.    Venue is proper in the District of New Jersey pursuant to 28 U.S.C. §1391 (b) and (c) because the Defendant is registered in and conducts business in this District, and a substantial portion of the events that give rise to the Plaintiff's claims occurred in this District.

15.    All of the alleged causes of action can be determined in this judicial

proceeding and will provide judicial economy, fairness, and convenience for the parties.

## **PARTIES**

16.     Plaintiff Latanzia Stephens is a resident of Daphne, Alabama. Plaintiff Stephens worked for Defendant as an Adjuster from approximately February 2022 to March 2023. Defendant compensated Plaintiff for her services as an Adjuster in the form of a yearly salary, most recently at the rate of $80,000 per year. Plaintiff is an "employee" of Defendant as defined by the Equal Pay Act. Plaintiff Stephens signed a consent form to join this collective action lawsuit, ***Exhibit A***.

17.     Additional putative Collective members were or are employed by Defendant as Adjusters in Alabama and potentially other states during the past three years, and their consent forms will also be filed in this case.

18.     According to Defendant's website, Defendant "is a program manager and servicing agent providing property insurance through a network of insurance agents and brokers. Essentially, we help agents and brokers make sure that policyholders like you get access to the high-quality, competitively priced products you need and deserve. As the third-party administrator of your policy, we provide all policy and billing support outside of the claims process."[1]

---

[1] *See* https://www.sagesure.com/faq/ (Last visited on August 6, 2023).

19.     Defendant SageSure Insurance Company LLC is a Florida Limited Liability Company (FEI/EIN Number 20-3855926) with a principal office located at 101 Hudson Street, Suite 2700, Jersey City, New Jersey 07302. Defendant's registered agent for service of process is Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301-2525.

20.     At all times relevant to this action, Defendant was an "employer" as defined by the Equal Pay Act.

21.     Upon information and belief, Defendant employed hundreds of Adjusters – including Plaintiff – within the past three years and across the United States to assist its customers with their customer service needs.

## GENERAL ALLEGATIONS

22.     Defendant maintains strict, centralized control over its Adjusters, which includes hiring and wage decisions. In order to maintain this control, Defendant has a rigid, top-down, hierarchical corporate structure.

23.     Adjusters, like Plaintiff, take calls from Defendant's clients and determine if the client's claim is covered by the client's insurance, and also determines the payout of the claim based on the loss type and insurance policy coverage.

24.     Defendant's hierarchal structure separates the Adjuster position into three levels, each of which vary in terms of pay and bonus structure. The three levels

of Adjuster are named Level I Adjuster, Level II Adjuster, and Level III Adjuster, with Level III Adjusters earning a higher salary and a higher bonus structure than Level II Adjusters, and Level II Adjusters earning a higher salary and a higher bonus structure than Level I Adjusters.

25.     Adjusters are told that Defendant's placement of Adjusters into each level is based upon the Adjuster's years of experience in the Adjuster position.

26.     However, due to Defendant's discriminatory hiring and pay policies, Defendant frequently hires male employees with the same or less experience at the Adjuster position, and pays them more, with a more favorable bonus structure, than female Adjusters with the same or more experience at the Adjuster position.

27.     Additionally, due to Defendant's discriminatory promotion policies, Defendant frequently promotes male employees with the same or less experience at the Adjuster position to higher levels of the Adjuster position (for example, from Level II to Level III), and pays them more, with a more favorable bonus structure, instead of promoting a female Adjuster with the same or more experience at the Adjuster position.

28.     These discriminatory hiring, promotion, and pay policies disparately impact female Adjusters, despite the Adjuster position requiring equal skill, effort, and responsibility.

29. Moreover, due to Defendant's discriminatory promotion policies, Defendant frequently promotes male employees with the same or less experience at the Adjuster position to higher levels of management positions within Defendant's company, and pays them more, with a more favorable bonus structure, instead of promoting a female Adjuster with the same or more experience at the Adjuster position.

30. Adjusters employed by Defendant report directly to Team Managers. Team Managers assist Adjusters with ensuring that Defendant's clients' claims are paid in a timely manner.

31. Team Managers employed by Defendant report directly to Operational Managers. Operational Managers oversee Defendant's insurance adjusting operations.

32. Upon information and belief, there are several more levels of executive managerial positions at Defendant's company, either at the Operational Manager level, or above.

33. Due to Defendant's discriminatory promotion policies, Defendant frequently promotes male employees with the same or less experience at the Adjuster position to the Team Manager position (for example, from a Level II or a Level III Adjuster position to a Team Manager Position), and pays them more, with a more favorable bonus structure, instead of promoting a female Adjuster with the same or

more experience at the Adjuster position.

34.     As a result of Defendant's discriminatory pay practices and policies, Level II Adjusters, Level III Adjusters, and Team Managers have been overwhelmingly male.

35.     Additionally, as a result of Defendant's discriminatory pay practices and policies, male Adjusters across the board make more than female Adjusters, both in terms of salary, as well as in terms of receiving a more favorable bonus structure.

36.      Upon information and belief, in order for Adjusters of any level to be hired, have their salary and bonus structure set, or have their salary and bonus structure increased, or be promoted to the Team Manager level, Defendant's Team Managers and Operational Managers must approve of the hiring, salary, bonus structure, and/or promotion.

37.     As a result, Defendant's executive leadership has executed a top-down wage policy, which consistently, systematically, and willfully discriminates on the basis of sex/gender by paying its female Adjusters less than their male colleagues, in the same positions, for the same work.

38.     Defendant's deliberate gender discrimination against women manifests itself in the salaries and rates of pay for each Adjuster position within Defendant's company.

39.     Defendant deliberately and willfully pays female Adjusters less than their male colleagues in the same positions with the same responsibilities. The wage disparity between female and male employees, at all levels of the Adjuster position within Defendant's company, is based solely on gender.

## PLAINTIFF STEPHENS' EXPERIENCE AS A SAGESURE ADJUSTER

40.     Plaintiff Stephens was hired by Defendant as a Level II Adjuster in February 2022. Plaintiff Stephens was promised a salary of $80,000 per year, plus an additional 10% bonus on that amount at the end of the year, should she hit certain performance metrics. Plaintiff has over eleven years of experience at the Adjuster position throughout her career.

41.     From approximately February 2022 to March 2023, Plaintiff was among the most talented and dedicated Adjusters employed by Defendant.

42.     Despite Plaintiff's demonstrated acumen and dedication, Plaintiff was consistently paid less than her male colleagues who had the same title and performed the same work.

43.     The only basis for the wage disparity between Plaintiff and her male colleagues was Defendant's consistent and deliberate gender-based wage discrimination against women.

44.     While Defendant purportedly had a policy of hiring and promoting Adjusters based on experience at the Adjuster level, in Plaintiff's experience, this

was not the case, as male Adjusters were frequently:

    a. Hired in with a higher salary and/or bonus structure than Plaintiff, despite Plaintiff having the same or more experience at the Adjuster level;

    b. Hired in at a higher Adjuster level than Plaintiff, despite Plaintiff having the same or more experience at the Adjuster level;

    c. Promoted to a higher position than Plaintiff (for example, from Level II Adjuster to Level III Adjuster, or Level III Adjuster to Team Manager), despite Plaintiff having the same or more experience at the Adjuster level.

45.    Plaintiff has observed this discrimination firsthand on numerous occasions. Plaintiff is aware that she, and other female employees, were paid substantially less than male comparators who had the same or less job responsibility, education, and experience.

46.    For example, Defendant's employees Patrick Gleason, John Ward, and Jonathan Shoud were all brought in to be Level II Adjusters (the same position as Plaintiff), and they each had less experience at the Adjuster position as compared to Plaintiff, yet they were paid more and received a better bonus structure. Plaintiff's job responsibilities were equivalent to that of her male comparators, however, not only was Plaintiff paid substantially less than her comparators, but also, Plaintiff was paid less than male comparators who had substantially less experience at the Adjuster level than her.

47.    Plaintiff verified this by speaking with co-workers, who told her that Defendant was hiring male colleagues at the Adjuster level and providing them with higher compensation packages than female Adjusters.

48.    Plaintiff also observed that Defendant's employees Patrick Gleason and John Ward were quickly promoted to supervisory or management roles ahead of Plaintiff or other more experienced female Adjusters in the company.

49.    By any measure, Plaintiff was an exemplary Adjuster of Defendant. Despite this, Plaintiff repeatedly observed discrepancies in pay between herself and male Adjusters. Further, Plaintiff repeatedly observed discrepancies between the promotional practices of Defendant, and Defendant's promotion of male employees ahead of herself and other female Adjusters.

50.    Plaintiff observed that Defendant consistently paid female Adjusters less than their male colleagues in the same positions doing the same work.

51.    Plaintiff was an exemplary Adjuster for Defendant who was consistently paid less than her male colleagues with the same titles performing the same job responsibilities. Defendant had no basis, other than gender, to pay Plaintiff less than her male colleagues. Defendant's actions were deliberate and willful and violated the Equal Pay Act.

52.    Defendant's unequal payment of compensation to males compared to Plaintiff and other female Adjusters was not made in accordance with any seniority

system, merit system, a system which measured earnings by quantity or quality of production, or a differential based on any factor other than sex.

53.     Defendant has paid Plaintiff, similarly situated individuals, and the proposed Collective, substantially less than similarly situated male co-workers with similar (or less) education, experience, and responsibilities.

54.     Defendant has consistently ignored complaints about its unlawful pay practices, inadequately investigated these complaints, and/or failed to implement steps that would or did eliminate their unlawful actions.

55.     Defendant's treatment and tolerance of gender discrimination has infected all aspects of employment practices affecting female Adjusters. Defendant has pursued, condoned, acquiesced in, and/or failed to eliminate continuing policies and/or practices that, though often facially neutral, have adversely treated and/or adversely impacted Defendant's female Adjusters and/or that have the intent and effect of denying females equal job and conditions of employment opportunities. These policies or practices include those already mentioned and also include, without limitation:

    a.  Failing and refusing to establish and/or enforce a uniform and unbiased process by which male and female employees can apply and compete equally for promotions, training opportunities, overtime, and management positions;

    b.  Promoting individuals into higher Adjuster levels, managerial, and supervisory positions without determining or attempting to evaluate whether the compensation provided is gender-biased;

    c.  Paying female Adjusters less than similarly situated male employees; and

    d.  Paying female Adjusters less than male employees with less education, experience, and/or responsibilities than the female employees.

56.    On May 31, 2023, Plaintiff filed a Charge of employment discrimination against Defendant with U.S. Equal Employment Opportunity Commission (Charge No. 425-2023-00684). On April 25, 2024, the EEOC issued the enclosed Notice of Right to Sue and Plaintiff therefore files the instant Amended Complaint to include claims under Title VII of the Civil Rights Act of 1964, as amended, Title 42 U.S.C. § 2000e, *et seq*., as well as the Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq*., for discrimination on the basis of her race, gender, and disabling medical condition(s).

## EQUAL PAY ACT COLLECTIVE ACTION ALLEGATIONS

57.    Plaintiff brings this action for violations of the Equal Pay Act as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself and on behalf of:

> *All current and former female insurance adjusters who worked for Defendant at any time during the past three years.*

(hereinafter referred to as the "EPA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

58.    Defendant is liable under the Equal Pay Act for, *inter alia*, failing to properly compensate Plaintiff and other similarly situated Adjusters.

15

59.    Excluded from the proposed EPA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside salespersons.

60.    Consistent with Defendant's policy and pattern or practice, Plaintiffs and the members of the EPA Collective are victims of gender discrimination wherein female Adjusters make less than male employees who performed substantially similar work and had equal responsibility; and also female Adjusters are intentionally denied promotional opportunities and/or conditions of employment in favor of male employees who performed substantially similar work and had equal responsibility.

61.    Defendant is aware of, and intentionally engages in, the above-described policy, pattern, and/or practice of gender discrimination against Plaintiff and the members of the EPA Collective.

62.    As part of its regular business practices, Defendant intentionally, willfully, and repeatedly engages in a pattern, practice, and/or policy of violating the EPA with respect to Plaintiff and the members of the EPA Collective. This policy and pattern or practice includes, but is not limited to:

    a.  Willfully failing to pay its female Adjuster employees, including Plaintiff and the members of the EPA Collective, the same as male employees who performed substantially similar work and had equal responsibility;

    b.  Willfully and intentionally denying female Adjusters, including

16

Plaintiff and the members of the EPA Collective, promotional opportunities and/or conditions of employment in favor of male employees who performed substantially similar work and had equal responsibility.

63.    Defendant is aware or should be aware that federal law required it to pay Plaintiff and the members of the EPA Collective equal pay for equal work, and explicitly prohibits discrimination on the basis of sex. 29 U.S.C. § 206(d).

64.    Defendant's unlawful conduct has been and continues to be widespread, repeated, and consistent.

65.    A collective action under the Equal Pay Act is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b).  The employees on behalf of whom Plaintiff bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

66.    The employment relationships between Defendant and every proposed EPA Collective member are the same and differ only by name, location, and rate of pay.  The key issues – the unlawful pay policies and denial of promotional opportunities – does not vary substantially among the proposed EPA Collective members.

67.    There are many similarly situated current and former Adjusters who

have been underpaid and/or denied promotional opportunities in violation of the EPA. They would benefit from the issuance of a court-authorized notice of this lawsuit and the opportunity to join.

68.    Plaintiff estimates the EPA Collective, including both current and former Adjusters over the relevant time period, includes hundreds of members. The precise number should be readily available from a review of Defendant's personnel and payroll records.

69.    All of the estimations discussed herein will be refined after class discovery is completed.

## COUNT I
### (Individual and Collective Action Claim)
### VIOLATION OF THE FAIR LABOR STANDARDS ACT OF 1938, AS AMENDED BY THE EQUAL PAY ACT OF 1963, 29 U.S.C. § 206, *et seq.* DISCRIMINATION ON THE BASIS OF SEX

70.    Plaintiff incorporates by reference all of the preceding allegations contained herein.

71.    This Count is brought on behalf of Plaintiff and all members of the EPA Collective against Defendant.

72.    Defendant is an employer of Plaintiff and the members of the EPA Collective within the meaning of the Fair Labor Standards Act of 1938, 29 U.S.C. § 206, *et seq.*, as amended by the Equal Pay Act of 1963.

73.    Defendant has discriminated against Plaintiff and the members of the

EPA Collective by paying them less than similarly situated male employees who performed jobs which required equal skill, effort, and responsibility, and which were performed under similar working conditions.

74.    Defendant has discriminated against Plaintiff and similarly situated individuals during the course of their employment with respect to the terms, conditions, and privileges of employment on the basis of gender, in violation of the Equal Pay Act, 29 U.S.C. § 206.

75.    Defendant intentionally paid Plaintiff and similarly situated individuals less than male employees who performed substantially similar work and had equal responsibility. Defendant also intentionally paid Plaintiff and similarly situated individuals less than male employees who had objectively less responsibility, education, and experience.

76.    Defendant discriminated against Plaintiff and the members of the EPA Collective by subjecting them to common discriminatory pay and performance management policies, including discriminatory salaries and wages in violation of the Equal Pay Act.

77.    The differential in pay between Plaintiff and the members of the EPA Collective and similarly situated male employees was not due to seniority, merit, quantity or quality of production, or a factor other than sex, but was, in fact, due exclusively to sex.

78.    Defendant caused, attempted to cause, contributed to, and caused the continuation of wage rate discrimination based on sex in violation of the Equal Pay Act.

79.    Defendant intentionally paid Plaintiffs and the members of the EPA Collective less than similarly-situated male employees in violation of the Equal Pay Act. The foregoing conduct constitutes a willful violation of the Equal Pay Act within the meaning of 29 U.S.C. § 255(a). Because Defendant has willfully violated the Equal Pay Act, a three year statute of limitations applies to such violations pursuant 29 U.S.C. § 255(a)

80.    Defendant had no reasonable grounds for believing that its actions were not in violation of the Equal Pay Act because Plaintiff and members of the EPA Collective put Defendant on notice of its gender-based wage discrimination when they complained of their unequal pay compared to their male comparators.

81.    Defendant's intentional and deliberate maintenance of a discriminatory pay structure, after being informed of an example of gender-based wage discrimination, constitutes a willful violation of the Equal Pay Act.

82.    As a direct and proximate result of Defendants' unlawful and willful discriminatory actions, Plaintiff and similarly situated individuals, members of the EPA Collective, have been damaged, sustaining lost wages, future lost earning capacity, physical, mental, and emotional distress, personal embarrassment,

humiliation, and more.

83.    As a result of Defendant's unlawful conduct, Plaintiff and members of the EPA Collective suffered and will continue to suffer harm including, but not limited to, lost earning, lost benefits, lost future employment opportunities, and other financial losses, as well non-economic damages.

84.    Plaintiff and the EPA Collective are entitled to all legal and equitable remedies available for violations of the Equal Pay Act, including, but not limited to, back pay, liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and litigations costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Latanzia Stephens, on behalf of herself and on behalf of the putative EPA Collective, requests judgment as follows:

a.    Conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the Equal Pay Act claims set forth herein (Count I);

b.    Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all proposed EPA Collective members, and permitting Plaintiff to send notice of this action to all those individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the EPA Collective members of their rights by law to join and participate in this lawsuit;

c.    Designating Plaintiff Latanzia Stephans as the Representative of the EPA Collective, and undersigned counsel as Collective counsel for the

same;

d.      Declaring Defendant violated the Equal Pay Act;

e.      Declaring Defendant's violations of the Equal Pay Act were willful;

f.      A declaratory judgment that Defendant's acts, policies, practices, and procedures complained of herein violate provisions of the Equal Pay Act;

g.      That the Court order injunctive relief that Defendant be immediately ordered to comply with the Equal Pay Act;

h.      Award back pay to Plaintiff and the members of the EPA Collective, including a sum to compensate Plaintiff and the members of the EPA

        Collective for any increased tax liability on a lump-sum award of back pay;

i.      Granting judgment in favor of Plaintiff and the EPA Collective against Defendant and awarding Plaintiff and the EPA Collective the full amount of damages and liquidated damages available by law;

j.      Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute; and

k.      Awarding such other and further relief as this Court deems appropriate.

## **COUNT II – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (DISPARATE TREATMENT, DISPARATE IMPACT, HOSTILE WORK ENVIRONMENT, AND RETALIATION)**

85.    Plaintiff repeats and re-alleges all prior Paragraphs of this Complaint as if fully set forth herein.

86.    As set forth in Plaintiff's enclosed Charge of Discrimination filed with the EEOC, Defendant has created, enforced, fostered and/or endorsed a workplace environment and culture that systematically discriminates against Black

employees, particularly female Black employees. Specifically, on information and belief, Defendant gives its Black employees workloads that are heavier than their white counterparts, and will shut off its claims system to allow white employees the opportunity to catch up on various tasks to help keep their individual performance metrics higher than that of Black employees. Additionally, on information and belief, Defendant manipulates the number of claims issued to white employees as compared to Black employees each day, whereas white employees are given every opportunity to succeed and have positive performance feedback and prospects for advancement within the company, whereas Black employees are set up for failure in every respect. On information and belief, in instances where Black employees such as Plaintiff attempt to speak out to management regarding the foregoing treatment, those employees are either ignored, or "blackballed" for future adverse employment action.

87. When Plaintiff began working for Defendant, she was advised by management that she would be assigned intake of three claims per day to work upon, but that eventually expanded more than threefold to ten claims per day. On information and belief, it takes 45 minutes to 2 hours to handle one claim intake as an adjuster, and Plaintiff was led to believe she would be working 8 hour shifts for Defendant. However, she was forced to work 13 or more hours per day to remain within the expectations of Defendant's "performance metrics," the precise nature of which were never fully disclosed to her. Plaintiff raised the foregoing concerns to

Defendant's management, but was advised not to send Human Resources any emails or calls. Plaintiff was also told that she cannot ask her manager questions about paid time off ("PTO").

88.    In January of 2023, after Plaintiff came back to work from short term disability leave following surgery, she suffered a nervous breakdown due to anxiety and stress disorders exacerbated by the Defendant's hostile work environment, which was the first time she had experienced the same in her lifetime. Defendant at that time put Plaintiff's PTO in the negative, and forced her to pay an overdraft fee for Defendant's mistake to her short-term disability insurance company. Plaintiff was further denied Family Medical Leave and ADA leave.

89.    On information and belief, Defendant hires white male employees with less years of experience than their Black counterparts, and pay those white employees more in salary and bonuses. White employees, particularly white male employees who are friends and family members of other white employees, are often promoted to management positions, whereas if a Black employee is promoted at all, it would be on a smaller scale, and not to a management / leadership role.

90.    On information and belief, Black employees are typically the first employees to have their employment terminated, and within Plaintiff's department, during her course of employment with Defendant, only Black female employees were terminated for alleged performance related issues, whereas white employees were placed on Performance Improvement Plans which would not result in their

termination.

91.    Plaintiff reported the foregoing circumstances to Defendant's management, as well as an incident involving racial discrimination and harassment committed by a white female manager. On information and belief, in retaliation for having done so, and for having requested disability leave, Plaintiff was denied family medical leave and disability benefits by Defendant, as well as was non-selected for promotions and/or recognized for company awards which she would have reasonably expected to receive based on white employees receiving the same in recognition for exemplary performance. Instead, Plaintiff was asked to resign from the company and take a severance package which was very unfavorable to her in exchange for a release of her claims against Defendant, which Plaintiff refused to do.

92.    The foregoing circumstances demonstrate the existence of unlawful employment discrimination against Plaintiff on the basis of her race and gender, which, when established through competent evidence, should be adjudicated by this Court as violations of Title VII of the Civil Rights Act on theories of disparate treatment, disparate impact, hostile work environment, and retaliation for which Plaintiff has been damaged financially and for which she has suffered emotional distress on the basis of having her dignity and worth as a woman of color being marginalized, and for which Defendant is liable as a matter of law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Latanzia Stephens, individually, requests judgment as follows:

a.  Declaring Defendant violated the Title VII of the Civil Rights Act of 1964

b.  Declaring Defendant's violations of the Civil Rights Act were willful;

c.  A declaratory judgment that Defendant's acts, policies, practices, and procedures complained of herein violate provisions of the Civil Rights Act;

d.  That the Court order injunctive relief that Defendant be immediately ordered to comply with the Civil Rights Act;

e.  Award compensatory and punitive damages to Plaintiff including a sum to compensate Plaintiff for any increased tax liability on a lump-sum award of damages;

f.  Granting judgment in favor of Plaintiff against Defendant and awarding Plaintiff the full amount of damages available by law;

g.  For injunctive relief reinstating Plaintiff to her position of employment with seniority;

h.  Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute; and

i.  Awarding such other and further relief as this Court deems appropriate.

## COUNT III – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (FAILURE TO ACCOMMODATE, DISPARATE TREATMENT, AND RETALIATION)

93.    Plaintiff repeats and re-alleges all prior Paragraphs of this Complaint as if fully set forth herein.

94.    On information and belief, Defendant was made aware by Plaintiff that she suffered from one or more disabling medical conditions related to mental illness upon her return from surgery under which she was receiving psychiatric care and medication for which she required reasonable accommodation to perform the responsibilities of her employment, and Defendant refused to engage with her in the required "interactive process" under which it had a duty under law to do in order to determine the nature of an appropriate reasonable accommodation for Plaintiff to do so. Instead, Defendant denied Plaintiff's claims for Family Leave, disability leave, and even demanded her resignation from employment.

95.    On information and belief, Plaintiff was treated differently from other employees and in a disparate, demeaning, and marginalizing manner by Defendant as a result of her disabling medical conditions, which led to adverse employment action taken against Plaintiff in retaliation for her having made Defendant aware of the nature of her disability and her need for a reasonable accommodation.

27

96.    The foregoing circumstances demonstrate the existence of unlawful employment

discrimination against Plaintiff on the basis of her disabling medical conditions

which substantially interfere with one or more major life activities, which, when

established through competent evidence, should be adjudicated by this Court as

violations of the Americans With Disabilities Act on theories of failure to

accommodate, disparate treatment, and retaliation for which Plaintiff has been

damaged financially and for which she has suffered emotional distress on the basis

of having her dignity and worth as a person with disabilities having been

marginalized, and for which Defendant is liable as a matter of law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Latanzia Stephens, individually, requests judgment

as follows:

a.    Declaring Defendant violated the Americans With Disabilities Act;

b.    Declaring Defendant's violations of the Americans With Disabilities Act were willful;

c.    A declaratory judgment that Defendant's acts, policies, practices, and procedures complained of herein violate provisions of the Americans With Disabilities Act;

d.    That the Court order injunctive relief that Defendant be immediately ordered to comply with the Americans With Disabilities Act;

e.    Award compensatory and punitive damages to Plaintiff including a sum to compensate Plaintiff for any increased tax liability on a lump-sum award of damages;

f.      Granting judgment in favor of Plaintiff against Defendant and awarding Plaintiff the full amount of damages available by law;

g.      For injunctive relief reinstating Plaintiff to her position of employment with seniority;

h.      Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute; and

i.      Awarding such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiff, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Court Rules and statutes made and provided with respect to the above-entitled cause.

Dated: July 24, 2024                  Respectfully Submitted,

                                              */s/ Daryl J. Kipnis*
                                              Daryl J. Kipnis

                                              Counsel for Plaintiff
                                              and the putative
                                              Collective

                                              (SBN 023812006)
                                              Kipnis Law Offices
                                              125 Half Mile Road, Suite 200
                                              Red Bank, NJ 07701
                                              T: 732-595-5298
                                              F: 732-412-7925
                                              daryl@kipnislawoffices.com

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**LATANZIA STEPHENS**,
individually, and on behalf of all others
similarly situated,

                         Plaintiff,

     v.

**SAGESURE INSURANCE
MANAGERS LLC**,

                     Defendant.

Case No.:

Hon.

## <u>CONSENT TO JOIN</u>

1. Pursuant to the Fair Labor Standards Act, 29 U.S.C. §216(b), and the Equal Pay Act, 29 U.S.C. § 206, I hereby consent to join and act as a plaintiff in the above-captioned lawsuit to recover damages under federal law.

2. I worked for SageSure Insurance Managers LLC as an insurance adjuster, and I agree to be bound by any adjudication or court rulings in this lawsuit, whether favorable or unfavorable. I understand that reasonable costs expended by Plaintiff's counsel on my behalf will be deducted from any settlement or judgment amount on a pro-rata basis among all other plaintiffs. I understand that Plaintiff's counsel will petition the Court for an award of attorneys' fees from any settlement or judgment.

3. I hereby designate the law firms of Sommers Schwartz, P.C. and Brown, LLC to represent me in this lawsuit.

Signature: _____

Print Name:    Latanzia Stephens

Date Signed:    12/08/2023

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | EEOC<br><br>FEPA | **425-2023-00684** |

| New Jersey Division On Civil Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| I Name *(indicate Mr., Ms., Mrs., Miss, Mx., Dr., Hon., Rev.)* | Home Phone | Year of Birth |
|---|---|---|
| Ms. Latanzia T. Stephens Jr. | ███████ | |

| Street Address |
|---|
| 2618 rosebud drive Mobile<br><br>MOBILE, AL 36695 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others.  *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| Sagesure | 101 - 200 Employees | |

| Street Address |
|---|
| 101 Hudson Street, Ste. 2700<br><br>JERSEY CITY, NJ 07302 |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest | Latest |
| Disability, Race, Sex | 10/01/2022 | 05/26/2023 |
| | Continuing Action |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I. I was hired by the above-named employer on February 14, 2022, in the position of insurance adjuster level 2.

II. I was treated less favorable than others due to my mental health condition that started from working on the job at this company. I was never allowed workman comp. And they retaliated against me, for complaining and has been holding my annual bonus since and any other benefits that I was due back in March. So I have been slowing receiving any benefits for Short-term disability compensation. I normally see a payment every 3 months or so.

The company management team hires white male employees with less years of experience over black employees. They paid them more.

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>**Digitally Signed By: Ms. Latanzia T. Stephens Jr.**<br><br>**05/31/2023** | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED  AND  SWORN  TO  BEFORE  ME  THIS  DATE *(month, day, year)* |
| *Charging Party Signature* | |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC  FEPA | 425-2023-00684 |

| **New Jersey Division On Civil Rights** | and EEOC |
|---|---|
| *State or local Agency, if any* | |

The workplace environment is very harsh for the black employees of all genders, especially females. The company only promote white males to management roles, regardless of their number of years and educational background.

Black have looked inside the system and notice that the workload is heavier than their white counterparts. They will shut off the claims system to allow whites employees the opportunity to catch up on tasks to help keep their metrics up. The company manipulates the number of claims issues to the whites per day vs black employees. The work burnout is really bad because they overwhelm the workers that isnt in the nepotism networks; meaning if they wasnt hired by the manager as a friend; they will not have a voice and will be blackballed, if speaking up against the discrimination and poor treatments.

The company management team hires white male employees with less years of experience over black employees. They paid them more Im salary and bonuses. The workplace environment is very harsh for the black employees and they only promote white employees mostly white males that is friends and prior employees at other companies. This promotions is appointed by nepotism. When a black is promoted it is on a small scale and never in management roles. Black have looked inside the system and notice that we is worked harder then our white counterparts. The company manipulates the number of claims issues to the whites per day vs black employees. The work burnout is really bad because they overwhelm the workers that isnt in the nepotism networks; meaning if they wasnt hired by the manager as a friend; they will not have a voice and will be blackballed. They discriminate against women especially black women. The salary was fair when they advised that we would be Getty 3 claims per day but as a started up increased us to over 10 per day. It takes 45 mins -2 hours to handle one claim intake as adjuster. We agreed to work 8 hour shifts but is forced 13 hours or more per day to stay in the expectation of the company metrics, but was never provided a metric system. No metric system but we is required to complete 10 hours or more in a 8 hour wait period. This was brought to management action about the late night of working. Its 24 hours in a day. We sleep 8 hours, work 13 hours or more and only have 3 hours or less to prepare dinner and take care of family needs such as kids homework etc. The company send me emails stating for me to not send Human Resources any emails or calls . They had my manger send me a email stating that I cant ask him a question about my PTO. The lack of communication has been really frustrating. I had a nervous breakdown after coming back form surgery. The company put my pto in the negative and also had me to be forced to pay a overdraft fee for their mistake to my short-term disability insurance company. I have been off from health well from the nervous breakdown since January 9. I submitted all documentation that was required. I was denied FML, ADA, and still pending for approval of my short-term disability. The company refuse to provide the staff with the proper tools for being successful, especially the blacks. They treat black with no respect and terminate us the fastest. In fact Im my department they have terminated only black women. They find a way to place whites on a performance plan that will never lead to termination. When they fired the black employee they offer severance pay and a signed contract to never file a complaint or lawsuit against the company. I was offer this same severance pay today and was told that they believe this isnt the company for me. Im still on medical leave at this time. They denied me ADA and also FML  my psychiatrist provided all of my medication notes as required by the employer. I was retaliated against because I reported a racial discrimination and harassment incident against by a white female manager. I was treated unfairly and wasnt acknowledged for my work ethics. I became a brunt in fear, for speaking out. They wasnt able to fire me because I had very good work ethic and my performance was superior. But I was clearly worked in a hostile environment and was very uncomfortable after the complaint was made. This lead to me never being announced for any promotions or company awards. This hindered my opportunities of growing with the companys promotions. This company refuse to be fair toward all counterparts in their networks. They manipulate with misleading intents they has been very demanding and depressing for black employees. They hired just enough of blacks to say that they have black staff. They work us over and over and demand that we dont provide feedback about poor work conditions. They allow managers to groom and train their friends for positions before they is shared with other employees. I was denied for ADA but cleared need accommodations that would allow me to met my daily goals in the 8 hours of the salary range. This has been an ongoing battle. I filed a claim with EEOC thinking that things would get better but its only gotten worse. I have other coworkers that is facing the same problems but is in fear of losing their jobs. The company people op manager told me to not sacrifice myself to help other adults. She clearly stated that I need to only worry about myself and take the severance pay. The nervous breakdown was a root of work burnout and all of the above complaints. My medical conditions shouldnt be a factor for the company wanting me to resign or walk away with severance benefits. I love working

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.  **Digitally Signed By: Ms. Latanzia T. Stephens Jr.**  **05/31/2023**  *Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT  SUBSCRIBED   AND   SWORN   TO   BEFORE   ME   THIS   DATE *(month, day, year)* |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | EEOC<br>FEPA | **425-2023-00684** |

| New Jersey Division On Civil Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

in my field but clearly only required to be treated fairly y my employer and I also asked HR to please treat the blacks the same as they treat the whites counterparts. ADA and being treated fair was all I demanded, but they is continuing to counter off on severance pay. My disability was clearly targeted because of the hostility work environment and the high expectations that is behind any daily performance of a adjuster. The company intentionally set higher demands on employees so that they can accommodate their hidden agenda to down play their true work ethics. I have never had any isnt with a nervous breakdown before this major life changing event. Yet the company refused to offer me ADA. Im a remote worker in Alabama that works for a company based in New Jersey. This company work politics, favoritism, and lack of diversity in management has created a very toxic environment. The trauma they I faced and also my colleagues has been very unpleasant. They dont care about my mental health or family/ work balance which they promoted heavily on their misleading company website and hiring promotions tools. The mangers hire their friends and promotion them after 1 month of coming on board. Overall, there is tons of really good talented black employees that work be very fair managers. The work culture is based on cliques and buddy system. If you dont fall into the category, you will not last. Unfortunately, the category do not include blacks. I was a target from the very day I reported a racism attack on me. They offer poor training to keep their hidden agenda alive from promoting their white counterparts. Sometime your workload is so demanding your lunch and breaks become a challenge. The stress, negativity, discrimination, and unfairness will literally make you physically sick, again my nervous breakdown was due to this horrible experience with SageSure. My hard work and dedication to this company was not appreciated. This company will blame you and offer you severance pay to keep you from any complaints. This company managers makes very bad decisions when it comes to lack of diversity in a management role. Poor leadership and a lack of diversity. I would like to file a complaint again SageSure for unfair wages, unfair treatment against black employees, and also discriminatory again females in the workplace.

III. I believe that I was discriminated because of my disability, in violation of the Americans with Disabilities Act of 1990, as amended. Given the above, I have been discriminated against due to my race(black) and in retaliation for my complaints regarding same in violation of Title Vll of the Civil Rights Act of 1964, as amended

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Digitally Signed By: Ms. Latanzia T. Stephens Jr.**<br><br>**05/31/2023** | SUBSCRIBED  AND  SWORN  TO  BEFORE  ME  THIS  DATE<br>*(month, day, year)* |
| *Charging Party Signature* | |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:**  Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1.  **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2.  **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3.  **PRINCIPAL PURPOSES.**  The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4.  **ROUTINE USES.**  This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws).  Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination.  This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions.  A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5.  **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.**  Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of.  Without a written charge, EEOC will ordinarily not act on the complaint.  Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed.  Charges may be clarified or amplified later by amendment.  It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA.  Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements.  You will be told which agency will handle your charge.  When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter.  Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings.  Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Newark Area Office**
283-299 Market St, Suite 1703
Newark, NJ 07102
(862) 338-9410
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 04/25/2024

**To:** Ms. Latanzia T. Stephens Jr.
24195 Alydar loop Daphne
DAPHNE, AL 36526
Charge No: 425-2023-00684

EEOC Representative and email:    NICOLE ZAMUDIO
Investigator
nicole.zamudio@eeoc.gov

---

### DISMISSAL OF CHARGE

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 425-2023-00684.

On behalf of the Commission,

Nicole Zamudio
Digitally signed by Nicole Zamudio
Date: 2024.04.25 12:12:35 -04'00'

Digitally Signed By:John Waldinger
04/25/2024

John Waldinger
Area Office Director